| | | |
|---|---|---|
| **MAE PENDLETON, Special** | ) | |
| **Administrator of the Estate of** | ) | |
| **Maurice Pendleton, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-18-707-G** |
| | ) | |
| **BOARD OF COUNTY** | ) | |
| **COMMISSIONERS FOR** | ) | |
| **OKLAHOMA COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: (1) Motion to Dismiss of Defendant P.D. Taylor in His Official Capacity as Sheriff of Oklahoma County (Doc. No. 5); (2) Motion to Dismiss of Defendant Taylor in His Individual Capacity (Doc. No. 6); (3) Motion to Dismiss of Defendant Board of County Commissioners for Oklahoma County (Doc. No. 7); (4) Motion to Dismiss of Defendants Willa Johnson, Brian Maughan, and Ray Vaughn in Their Official Capacities as County Commissioners of Oklahoma County (Doc. No. 8); and (5) Motion to Dismiss of Defendants Johnson, Maughan, and Vaughn in Their Individual Capacities (Doc. No. 9). Plaintiff has submitted four Responses in opposition (Doc. Nos. 14, 15, 16, 17). After considering the parties' arguments and the governing law, the Court determines that the Motions should be granted in part and denied in part, as set forth more particularly below.

## Summary of the Pleadings

Plaintiff Mae Pendleton filed this lawsuit as Special Administrator for the Estate of her son, Maurice Pendleton, who was beaten to death by fellow inmates while in pretrial custody at the Oklahoma County Detention Center (the "OCDC"). Plaintiff alleges that, on or about July 18, 2017, Mr. Pendleton was "locked inside a converted basketball court used as a holding pen for inmates facing disciplinary sanctions." Compl. (Doc. No. 1-2) ¶¶ 16, 23. The holding area "was not supervised by any jail staff," and inmates were "left unrestrained to freely roam about without restriction or oversight." *Id.* ¶ 18. While locked in the holding area, Mr. Pendleton "was confronted and attacked by at least four inmates," three of whom were "awaiting disciplinary hearings for attacking other inmates" and all of whom had a known "history of violence." *Id.* ¶¶ 19-20. The attackers "savagely beat[]" Mr. Pendleton, "kick[ing] [him] repeatedly in the head and body," while "stripping him naked." *Id.* ¶¶ 21-22. When jailers arrived, Mr. Pendleton was "still alive and consci[ous]"; however, he died several hours later from a traumatic head injury. *Id.* ¶¶ 23, 25.

Defendants include the Board of County Commissioners for Oklahoma County, Oklahoma (the "Board"); County Commissioners Willa Johnson, Brian Maughan, and Ray Vaughn (collectively, the "Commissioners"),[1] in both their official and individual

---

[1] After this lawsuit was filed, Carrie Blumert and Kevin Calvey replaced Defendants Johnson and Vaughn as County Commissioners. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Blumert and Mr. Calvey are hereby substituted for those Defendants on all remaining official-capacity claims alleged against them. To reduce confusion, the undersigned refers herein to all parties as they are identified in the Complaint.

capacities; and Oklahoma County Sheriff P.D. Taylor, in both his official and individual capacities. Plaintiff alleges Defendants had "actual notice" that inadequate staffing and monitoring at the OCDC were "likely to result in inmate-on-inmate violence" and, despite having such knowledge, failed to allocate funding to address the deficiencies. *Id.* ¶ 41. Plaintiff alleges: "Either the Board failed to adequately fund Taylor's office to fulfill its constitutional duty to provide a facility that was adequate for the safekeeping of inmates, or Taylor's office squandered taxpayer money on luxuries instead of correcting the deficiencies." *Id.* ¶ 40.

Plaintiff seeks "a declaration that conditions of confinement at the OCDC caused the death of Maurice Pendleton and deprived him of the fundamental constitutional right to safety and bodily integrity." *Id.* ¶ 2. She also seeks damages for the alleged federal and state constitutional deprivations under 42 U.S.C. § 1983 and *Bosh v. Cherokee County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013), respectively. *See id.* ¶ 3.

ANALYSIS

## I. The Rule 12(b)(5) Motion

The Commissioners first contend that dismissal of the claims raised against them in their individual capacities is required under Federal Rule of Civil Procedure 12(b)(5) because Plaintiff failed to properly serve them with this lawsuit.

Personal service under Rule 4 of the Federal Rules of Civil Procedure "notif[ies] a defendant of the commencement of an action against him." *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992). Further, such service "provides the mechanism" for the court to "assert[] jurisdiction over the person of the party served."

*Id.*; *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1999). A Rule 12(b)(5) motion challenges the plaintiff's mode of serving process on the moving party. *Craig v. City of Hobart*, No. CIV-09-53-C, 2010 WL 680857, at *1 (W.D. Okla. Feb. 24, 2010) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353 (3d ed. 2004)). In opposing a Rule 12(b)(5) motion, the plaintiff bears the burden of showing that he or she "complied with all statutory and due process requirements." *Id.* "Motions under Federal Rules 12(b)(4) and 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the district court a course of action—quashing the process without dismissing the action—other than simply dismissing the case when the defendant's defense or objection is sustained." 5B Wright & Miller, *supra*, § 1354; *accord Gray v. Ritter*, No. CIV-09-909-F, 2010 WL 4880890, at *2 (W.D. Okla. Oct. 8, 2010).

Pursuant to Federal Rule of Civil Procedure 4(e)(1), service may be made upon an individual within a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Thus, service upon these Defendants in accordance with the Oklahoma Pleading Code would satisfy Rule 4.

Pursuant to the Oklahoma Pleading Code, a summons and initial pleading may be served by "certified mail, return receipt requested and delivery restricted to the addressee." Okla. Stat. tit. 12, § 2004(C)(2)(b). The Commissioners' Motion argues that Plaintiff failed to comply with Oklahoma's service statute because Plaintiff served the Petition and

Summons by unrestricted (as opposed to restricted) certified mail. *See* Comm'rs Indiv. Capacity Mot. (Doc. No. 9) at 5-6.[2] The Commissioners have not supplied the executed summonses to the Court, and Plaintiff has not filed the executed returns of service as required by Federal Rule of Civil Procedure 4(*l*).

Plaintiff does not dispute, however, that service was improper under Oklahoma law. *See* Pl.'s Resp. to Comm'rs Indiv. Capacity Mot. (Doc. No. 15) at 6-7. Plaintiff nonetheless argues that, absent any allegation that the deficiency has denied these Defendants due process, dismissal is unwarranted. The Court agrees.

"Strict compliance with the Oklahoma statutory scheme is not required for service to be proper[.]" *Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1292 (N.D. Okla. 2016). Instead, Oklahoma courts adhere to a rule of "substantial compliance." *Graff v. Kelly*, 814 P.2d 489, 495 (Okla. 1991); *Free v. Okla. Dep't of Corrs.*, No. CIV-13-87-F, 2014 WL 347627, at *4 (W.D. Okla. Jan. 30, 2014). "To determine whether substantial compliance has occurred, the court must consider the circumstances and determine whether the found departure offends the standards of due process and thus may be deemed to have deprived a party of its fundamental right to notice." *Bristow*, 210 F. Supp. 3d at 1292 (internal quotation marks omitted). In other words, the court must find that the deficient service nonetheless fairly apprised the defendant of the lawsuit and the consequences attendant to default. *Id.*

Both the Tenth Circuit and the Oklahoma Court of Civil Appeals have recognized

---

[2] References to the parties' filings use the ECF pagination.

that the statutory requirement of restricted delivery is not essential, so long as the defendant had actual notice of the pending litigation. *See Nikwei v. Ross Sch. of Aviation, Inc.,* 822 F.2d 939, 943-44 (10th Cir. 1987) (rejecting defendant's argument that "service was fatally defective" under prior Oklahoma statute because "plaintiffs did not request a return receipt from addressee only" where "the evidence demonstrated that the defendant himself was served"); *Coulsen v. Owens,* 125 P.3d 1233, 1237 (Okla. Civ. App. 2005) (holding that "service [was] valid," despite the fact that "the certified mail delivery was not designated 'restricted,'" where "there was no dispute that Defendant received the summons and petition").

As in *Niwei* and *Coulsen*, the record in this case reflects that the Commissioners received actual notice of Plaintiff's lawsuit and are otherwise unprejudiced by Plaintiff's technical deficiency. Accordingly, the Court concludes that Plaintiff substantially complied with Oklahoma's service statute, the requested relief of dismissal or quashing of service is unwarranted, and the Court may exercise personal jurisdiction over the Commissioners.

## II.     *The Rule 12(b)(1) Motions*

The Board and the Commissioners argue that the Court lacks subject-matter jurisdiction over Plaintiff's claims because Plaintiff lacks standing to sue as her injury is not traceable to the Board. *See* Bd. Mot. (Doc. No. 7) at 12-20; Comm'rs Official Capacity Mot. (Doc. No. 8) at 11-17; Comm'rs Indiv. Capacity Mot. at 15-19. The crux of this argument is that, because the Board "has no express statutory authority to act in areas of jail operations," the injury alleged is not "traceable to the [Board's] acts or omissions" or

to the conduct of any individual Commissioner. Bd. Mot. at 15. These Defendants argue that they do not exercise supervisory authority over Defendant Taylor as Sheriff, that Plaintiff is not complaining about any policies of the Board, and that Plaintiff cannot establish that her injuries "are fairly traceable to conduct of [the Board]," and thus the Board and the Commissioners are not proper parties to this lawsuit. *Id.*

This standing argument conflates the justiciability of a plaintiff's lawsuit with the plaintiff's ultimate ability to prove a defendant's liability in that lawsuit. *Cf. Kauble v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-17-729-D, 2018 WL 912285, at *3 (W.D. Okla. Feb. 15, 2018) ("While couched in terms of subject matter jurisdiction, [the Oklahoma County Board of County Commissioners'] argument [that the plaintiff lacks Article III standing to sue], in reality, is premised on the notion that [the plaintiff] has failed to state a claim upon which relief can be granted because [the Oklahoma County Board of County Commissioners] has no authority to act in areas of detaining or releasing inmates."); *Thurman v. Cty. Comm'rs of Okla. Cty.*, No. CIV-17-950-M, 2018 WL 6237908, at *3 (W.D. Okla. Oct. 16, 2018) (R. & R.) (same), *adopted*, 2018 WL 6220213 (W.D. Okla. Nov. 28, 2018).

This type of standing argument has been repeatedly rejected by this Court:

> Under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, in general, it exercises the powers of the county. 19 Okla. Stat. § 3. A suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county. 19 Okla. Stat. § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county. . . . .

> The motion filed by the Board of County Commissioners confuses the issue by arguing that it (the Board) is not a "proper party," essentially because it didn't do anything wrong, or fail to do anything it had a duty to do. But, as noted above, the Board, as such, is not even a legal entity and obviously cannot be a "party" regardless of what it did or didn't do. Rather, the question is whether a basis for claim against the county is stated.
>
> *Snow v. Bd. of Cty. Comm'rs of Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (citing *DuBois v. Bd. of Cty. Comm'rs of Mayes Cty.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014)).

*Cramer v. Okla. Cty. Bd. of Cty. Comm'rs*, No. CIV-18-179-G, 2019 WL 1937602, at *5-6 (W.D. Okla. May 1, 2019) (citation omitted).

Plaintiff has plausibly alleged that the County, through its Board of three Commissioners, is responsible for providing and funding a jail for Oklahoma County and failed to properly fulfill that responsibility. *See, e.g.*, Compl. ¶¶ 5, 32-34, 50. Further, as explained below, Plaintiff has plausibly alleged a claim against Oklahoma County, acting through Defendant Taylor, regarding the operation of the Jail. *See, e.g.*, *id.* ¶¶ 6, 42.

> "Although it is true that in certain circumstances a board of county commissioners may be an improper party because its policies or customs cannot be shown to be responsible for an alleged constitutional violation, that does not mean that a board can *never* be a proper party as a matter of law." *Kauble*, 2018 WL 912285, at *4; *accord Chichakli v. Samuels*, No. CIV-15-687-D, 2016 WL 11447755, at *3 (W.D. Okla. Mar. 10, 2016) (R. & R.) ("Grady County can be held liable notwithstanding the fact that the Grady County Board of County Commissioners, itself, does not operate the jail or promulgate the policies attendant thereto."), *adopted*, 2016 WL 2743542 (W.D. Okla. May 11, 2016). "The United States Supreme Court has made it clear that any official or entity whose actions represent official policy may be liable under § 1983." *Vernon v. Slabosky*, No. CIV-11-815-HE, 2016 WL 4775739, at *14 (W.D. Okla. Sept. 14, 2016) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

*Cramer*, 2019 WL 1937602, at *6.

The request to dismiss Plaintiff's claims under Rule 12(b)(1) is therefore denied.

### III.    *The Rule 12(b)(6) Motions*

#### A.  *Applicable Standard*

Federal Rule of Civil Procedure 12(b)(6) prescribes that a defendant may seek dismissal when the plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim that is plausible on its face." (internal quotation marks omitted)).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

#### B.  *Plaintiff's Federal Constitutional Claims*

Plaintiff's federal claims are asserted pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights."  *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016).  "To state a claim under § 1983, a

plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Tenth Circuit has explained "that neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners. They are, however, responsible for taking reasonable measures to insure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (citation omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).

Plaintiff asserts that Defendants are liable for failing to protect Mr. Pendleton while he was detained at OCDC and argues that Mr. Pendleton's beating and death "resulted from constitutionally infirm conditions at the jail." *Id.* at 760; *see* Compl. ¶¶ 62-63, 70-71.[3] Although Mr. Pendleton was a pretrial detainee and therefore subject to protection under the Fourteenth Amendment's Due Process Clause, the Court applies an analysis identical to that applied to the Eighth Amendment claims brought by convicted prisoners. *See Lopez*, 172 F.3d at 759 n.2.[4] To establish his claim, Plaintiff must show: (1) that Mr.

---

[3] The pleading also references "inadequate supervision," but the supporting factual allegations clarify that this phrase is a contention that inmates were inadequately supervised while housed at OCDC—i.e., an example of an infirm condition of confinement and a failure to protect—rather than a theory of liability premised upon a lack of training or supervision of jailers resulting in specific acts or omissions by those jailers. *Compare* Compl. ¶ 67 (claiming that Mr. Pendleton, as a detainee, had a "right to adequate supervision"), *with Lopez*, 172 F.3d at 760 (affirming summary judgment on a failure-to-train-and-supervise claim where plaintiff failed to identify his jailer or to tie any specific lack of training or poor supervision of his jailers to his injury).

[4] Plaintiff argues that for pretrial detainees the traditional deliberate-indifference standard should be abandoned in favor of an objective-only standard. *See* Pl.'s Resp. to Taylor Indiv. Capacity Mot. (Doc. No. 14) at 12-13 (citing *Kingsley v. Hendrickson*, 135 S. Ct.

Pendleton was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; and (2) that Defendants acted with "deliberate indifference" to his safety—i.e., that Defendants were "aware of and disregarded an excessive risk" to his safety "by failing to take reasonable measures to abate the risk." *Lopez*, 172 F.3d at 761 (citing *Farmer*, 511 U.S. at 847); *see also DeSpain v. Uphoff*, 264 F.3d 965, 971-72 (10th Cir. 2001). Whether prison conditions pose a "substantial risk of serious harm" is evaluated objectively, while the "deliberate indifference" inquiry is evaluated subjectively. *Farmer*, 511 U.S. at 834. All Defendants have argued that Plaintiff has not adequately pled these elements of her claim. The Court first considers Plaintiff's pleading of these aspects of her claim and then addresses Defendants' additional arguments for dismissal.

1. *Whether Mr. Pendleton Was Incarcerated Under Conditions Posing a Substantial Risk of Serious Harm*

"The Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Therefore, to establish an Eighth Amendment violation, a plaintiff "must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of

_____

2466 (2015)). *Kingsley*, an excessive-force case, did not directly address the standard applicable to a pretrial detainee's conditions-of-confinement claim, and the Tenth Circuit has noted that circuits "are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees." *Estate of Vallina v. Cty. of Teller Sheriff's Office*, 757 F. App'x 643, 646 (10th Cir. 2018). Further, the Tenth Circuit "has not yet ruled directly on this issue." *Burke v. Regalado*, No. 18-CV-231-GKF-FHM, 2019 WL 1371144, at *4 (N.D. Okla. Mar. 26, 2019). The Court therefore follows established Tenth Circuit precedent in evaluating this claim (which survives even under the dual-prong standard, as discussed below). *See id.*

serious harm' to inmate health or safety." *DeSpain*, 264 F.3d at 973 (citing *Farmer*, 511 U.S. at 834).

Plaintiff alleges that Mr. Pendleton was incarcerated under conditions that left him vulnerable to attack by inmates with a history of violent behavior, both generally and towards other inmates. *See* Compl. ¶¶ 16-25. Such conditions include, without limitation, inadequate staffing, insufficient monitoring of inmates, and failure to segregate or otherwise restrain inmates with known violent tendencies. *See id.* ¶¶ 18, 21. Plaintiff further alleges that these conditions fostered previous incidents of inmate-on-inmate violence at the OCDC, which in some cases resulted in death. *See id.* ¶ 54 & n.13.

These allegations, the truth of which is presumed at this stage in the litigation, satisfy the objective component of Plaintiff's failure-to-protect and conditions-of-confinement claims. *See Lopez*, 172 F.3d at 761 (finding that at summary judgment stage objective component of Eighth Amendment claim was satisfied by evidence that understaffing and lack of inmate monitoring had led to previous attacks at the jail); *Morgan v. Bd. of Cty. Comm'rs of Okla. Cty.*, No. CIV-08-1317-R, 2010 WL 11508854, at *2 (W.D. Okla. Mar. 11, 2010) (holding that at summary judgment stage objective component of Eighth Amendment claim was satisfied by evidence that decedent was housed in a cell with an inmate who had been charged with violent crimes and who had a history of violent and psychotic episodes); *cf. Martinez v. Beggs*, 563 F.3d 1082, 1088-89 (10th Cir. 2009) (plaintiff's death was "sufficiently serious" to satisfy the objective component for claim of deliberate indifference to serious medical needs).

The Supreme Court has explained that, while deliberate indifference "entails something more than mere negligence," it "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To impose Eighth Amendment liability, a plaintiff must demonstrate that the defendant knew about and disregarded "an excessive risk to inmate health or safety." *Id.* at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Whether a defendant knew about and ignored a substantial risk is generally a question of fact. *DeSpain*, 264 F.3d at 975 (citing *Farmer*, 511 U.S. at 842). "Because it is difficult, if not impossible, to prove another person's actual state of mind," the defendant's knowledge of the risk "may be inferred from circumstantial evidence." *Id.* At the pleading stage, however, it is enough that the existence of such knowledge is "'averred generally' in the complaint." *Kikumura v. Osagie*, 461 F.3d 1269, 1293-94 (10th Cir. 2006) (citing Fed. R. Civ. P. 9(b)), *overruled on other grounds as recognized in Robbins*, 519 F.3d at 1246.

Plaintiff alleges that Defendants "have known about inadequate supervision at the OCDC since 1995." Compl. ¶ 49; *see also id.* ¶¶ 41 ("the Board, Commissioners, Taylor, and Taylor's office had actual notice of deficiencies likely to result in inmate-on-inmate violence"), 58 ("[t]he deadly dangers have been known to the Oklahoma County for more

than 20 years"). Plaintiff further alleges, upon information and belief, that Defendants had "reviewed" a number of publications documenting "an inordinately high risk of detainee-on-detainee violence" at the OCDC due to understaffing and lack of inmate monitoring. *Id.* ¶¶ 42, 59; *see also id.* ¶¶ 44 (alleging that a grand jury admonished the County in 1995 publication regarding the practice of "leaving entire pods with no physical supervision for several hours"), 45 (alleging that the federal government advised the County in 1998 of a failure to "consistently staff[]" security posts and a failure to conduct "sight checks . . . as frequently as needed"), 54 n.13 (citing four publications documenting inmate-on-inmate violence at the OCDC).

Defendants' arguments to the contrary are unavailing. Defendants first contend that Plaintiff's claims fail for want of allegations "that the inmates who attacked [Mr. Pendleton] posed a specific risk of harm that was personal to [him] . . . in particular." *See* Taylor Official Capacity Mot. (Doc. No. 5) at 15-16; Taylor Indiv. Capacity Mot. (Doc. No. 6) at 14; Bd. Mot. at 25; Comm'rs Official Capacity Mot. at 22; Comm'rs Indiv. Capacity Mot. at 23. But "knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). And "it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Defendants next submit that "insufficient funding for jail functions and/or improper expenditure of funds" "cannot serve as a basis for constitutional tort liability." *See* Taylor Official Capacity Mot. at 17; Taylor Indiv. Capacity Mot. at 16; Bd. Mot. at 27; Comm'rs

Official Capacity Mot. at 24; Comm'rs Indiv. Capacity Mot. at 25. While budget appropriations and expenditures are not a "condition of confinement" per se, such appropriations and expenditures do, as Defendants concede, "impact certain conditions of confinement," and can therefore produce unconstitutional jail conditions, albeit indirectly. Thus, in *Lopez v. LeMaster*, the plaintiff was permitted to proceed on a theory that "understaffing, lack of monitoring equipment or lack of a means by which inmates could contact guards" created "constitutionally inadequate conditions at the jail," which increased the likelihood of inmate-on-inmate violence. *Lopez*, 172 F.3d at 760.

Finally, Defendants challenge the premise that "additional staffing and/or better monitoring might have prevented the assault." Defendants criticize Plaintiff for "mak[ing] no factual allegations concerning the number of staff dedicated to the jail, the number of staff assigned to the floor on which Plaintiff was in temporary housing, or the number of staff available to respond to emergency situations as backup." Taylor Official Capacity Mot. at 18; Taylor Indiv. Capacity Mot. at 17; Bd. Mot. at 28; Comm'rs Official Capacity Mot. at 25; Comm'rs Indiv. Capacity Mot. at 26. But the plausibility required for pleading a claim "does not impose a probability requirement"; "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the conduct alleged in support of the claim. *Twombly*, 550 U.S. at 556. Plaintiff has satisfied this burden by alleging that unconstitutional conditions at the OCDC, including insufficient staffing and monitoring of inmates, created the conditions for the attack that caused Mr. Pendleton's death. *See* Compl. ¶¶ 18, 21. At this stage in the litigation, Plaintiff is not required to set forth "detailed factual allegations." *Twombly*, 550 U.S. at 555. Nor is she required to

prove causation. *See Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 111 (1st Cir. 2014) (noting that at the pleading stage, a plaintiff "need not *establish* causation"; rather, "[t]he facts contained in the complaint need only show that the claim of causation is plausible" (internal quotation marks omitted)).

These allegations, taken as true, demonstrate Defendants' awareness that the conditions at the OCDC posed a substantial risk of serious harm to Mr. Pendleton and that, despite such awareness, Defendants disregarded that risk. Accordingly, Plaintiff has satisfied her pleading burden on the subjective component of her claims.

### 3. *Official-Capacity Claims Against Defendant Taylor and the Commissioners*

Defendant Taylor and Defendant Commissioners assert that because Plaintiff is suing the Board, Plaintiff's official-capacity claims against the County officials are redundant and should be dismissed. *See Stout v. U.S. ex rel. U.S. Marshal's Serv.*, No. 13CV753 WJ/GBW, 2013 WL 5954780, at *2 (W.D. Okla. Nov. 4, 2013) ("An action filed against a state official in his or her official capacity is simply another way of pleading an action against an entity of which an officer is an agent."). Such claims are generally "duplicative and unnecessary" given that Plaintiff "has named [the Board] as a defendant." *Brashear v. Tulsa Cty. Bd. of Cty. Comm'rs*, No. 15-CV-473-GKF-PJC, 2016 WL 633374, at *4 (N.D. Okla. Feb. 17, 2016); *see also* Okla. Stat. tit. 19, § 4 ("In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of ____ . . . ."); *Cramer*, 2019 WL 1937602, at *5

n.5.[5]

Plaintiff submits that her official-capacity claims—at least those asserted against the Commissioners—are neither duplicative nor unnecessary because there is a "material difference . . . between damages available [for] federal claims against the Board, and damages available against commissioners in their official capacity." Pl.'s Resp. to Bd. Mot. & Comm'rs Official Capacity Mot. (Doc. No. 16) at 17 (citing *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296 (10th Cir. 2003)). *In Youren*, the Tenth Circuit held that "the district court erred in preventing the jury from considering the imposition of punitive damages" against a government employee sued in her official capacity. *Youren*, 343 F.3d at 1309. This aspect of *Youren* has not been overturned but has repeatedly "been called into question by lower courts," *Estep v. City of Del City ex rel. Del City Police Dep't*, No. CIV-17-625-M, 2018 WL 1598674, at *4 (W.D. Okla. Mar. 30, 2018), and, in fact, by the Tenth Circuit itself. *See Cross Continent Dev., LLC v. Town of Akron*, 548 F. App'x 524, 531 (10th Cir. 2013) (characterizing *Youren* as "an anomalous outlier" and reasoning that if "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, and a municipality is immune from punitive damages under 42 U.S.C. § 1983, then individuals sued in their official capacity should be immune from punitive damages as well" (internal quotation marks omitted)). This Court and others have disallowed redundant official-capacity suits despite Youren's anomalous holding *See, e.g.*, *Morris v. Humphrey*, No.

---

[5] "A § 1983 action appropriately is pleaded against a municipality *either* by naming the municipality itself *or* by naming a municipal official in his or her official capacity." *Stout*, 2013 WL 5954780, at *2 (alteration and internal quotation marks omitted).

CIV-14-497-W, 2014 WL 3451033, at *1 n.3 (W.D. Okla. July 11, 2014) (acknowledging *Youren* but dismissing official-capacity claim as redundant of claim against the municipality); *Cooper v. Cagle*, No. CIV-06-881-C, 2007 WL 2840385, at *3 (W.D. Okla. Sept. 27, 2007) (acknowledging *Youren* and nonetheless dismissing punitive-damages claim against state actors sued in their official capacities).

Given the Tenth Circuit's published position on the matter and the pleading's stated claim for punitive damages, *see* Compl. ¶ 74(B), however, the Court declines to dismiss these official-capacity claims at this early stage of the proceedings. The Court will reassess this request for dismissal at a later stage of the proceedings if necessary. *See Estep*, 2018 WL 1598674, at *4.

### 4. *Municipal Liability Claims*

Defendant Board and the individual Defendants in their official capacities seek dismissal on the basis that Plaintiff has failed to adequately allege municipal liability on the part of the County under the rubric established in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, a government entity is not liable under § 1983 for injury "inflicted solely by its employees or agents." *Id.* at 694. Rather, to hold Oklahoma County liable on Plaintiff's claims, Plaintiff must show "(1) the existence of a county policy or custom by which [Plaintiff] was denied a constitutional right, and (2) that the policy or custom was the moving force behind the constitutional deprivation[—]i.e. that there is a direct causal link between the policy or custom and the injury alleged." *Snow*, 2014 WL 7335319, at *2 (internal quotation marks omitted). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-

liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

> i. *Whether Plaintiff Has Alleged Acts or Omissions by an Official with Final Policymaking Authority*

As Sheriff of Oklahoma County, Defendant Taylor has final policymaking authority with respect to jail operations at the OCDC, including "staffing and [the] monitoring of inmates." *Lopez*, 172 F.3d at 763 (citing Okla. Stat. tit. 19, § 513; *id.* tit. 57, § 47). Plaintiff alleges acts and omissions by Taylor that fall within the scope of this authority—namely, that Taylor did not use available funds to ensure adequate staffing and inmate supervision. Compl. ¶ 40; *see also id.* ¶¶ 34-39, 41-50. "[A] plaintiff may be able to demonstrate an official 'policy or custom' for § 1983 purposes through reference to 'a final decision' by a county policymaker." *Cramer*, 2019 WL 1937602, at *6 (quoting *Schneider*, 717 F.3d at 770).

Plaintiff's alternative theory is that the Board "failed to adequately fund Taylor's office," making it impossible "to provide a facility that was adequate for the safekeeping of inmates." *Id.* ¶ 40. The Board is statutorily obligated to provide a "jail . . . for the safekeeping of prisoners lawfully committed." Okla. Stat. tit. 57, § 41. This obligation necessarily encompasses the appropriation of funds for jail operations. *See Lopez*, 172 F.3d at 763 (referencing testimony that "the county commissioners failed to provide funding for correction of deficiencies at the jail . . . even though such funding was required

by the Oklahoma statutes"); *Vernon*, 2016 WL 4775739, at *14 (noting that title 57, section 41 of the Oklahoma Statutes impose a duty to appropriate funds to discharge the Board's responsibility for providing a jail for the safekeeping of inmates).

While the Board resists the allegation that it has "non-delegable statutory responsib[ility]" to provide an adequate jail, Compl. ¶ 5, it acknowledges its role in preparing the OCDC's operational budgets for approval by the County's excise board. *See* Bd. Mot. at 10. It is thus apparent that the Board exercises some degree of policymaking authority with respect to operational funding at the OCDC. *Accord State ex rel. Macy v. Bd. of Cty. Comm'rs of Cty. of Okla.*, 986 P.2d 1130, 1135 (Okla. 1999) (observing that "[w]hen filed with the excise board, the county budget constitutes an *appropriation* for each of the included items"); *Harper v. Woodward Cty. Bd. of Cty. Comm'rs*, No. CIV-11-0996, 2014 WL 7399367, at *9 (W.D. Okla. Dec. 29, 2014) (explaining that "the county's board of commissioners sets policies, including fiscal policies, that may be implicated in a violation of a county inmate's federal rights"). The precise degree of that authority, and whether it renders the Board a policymaker under *Monell*, involves factual questions that the Court is unable to resolve on the pleadings. *See Kauble*, 2018 WL 912285, at *4; *cf. Macy*, 986 P.2d at 1135 (explaining that "[t]he County Budget Act gives absolutely no textual indication of how much authority over the budget is delegated or retained by the board of county commissioners" (emphasis omitted)). At this stage in the litigation, it is enough that Plaintiff has alleged inaction and failures by the Board with respect to its policymaking function in the overall budgeting process.

*ii. Whether Plaintiff Has Alleged an Official Policy or Custom*

Plaintiff also alleges that Mr. Pendleton's death resulted from unconstitutional policies or practices, such as understaffing and failure to supervise inmates. *See, e.g.*, Compl. ¶ 71 (alleging that Defendants "enact[ed] policies or practices that . . . deprived [Mr. Pendleton] of the right to life and liberty"); ¶ 63 (alleging that Defendants "adopt[ed] policies and/or practices that . . . permitt[ed] or require[d] jailers to house non-violent pretrial detainees in unsupervised locations with unrestrained inmates known to harbor a propensity for inmate-on-inmate violence").

"A challenged practice may be deemed an official policy or custom" "if it is a formally promulgated policy, a well-settled custom or practice," or deliberately indifferent supervision. *Schneider*, 717 F.3d at 770. As detailed above, Plaintiff has alleged that, in the past 20 years, understaffing and inadequate inmate supervision at the OCDC has caused a high degree of inmate-on-inmate violence, including attacks that resulted in death. *See* Compl. ¶¶ 41, 42, 44, 45, 49, 54 n.13, 59. These allegations are sufficient to plead a policy or practice of understaffing and/or inadequate supervision of inmates. *See Lopez*, 172 F.3d at 763 (at summary-judgment stage, evidence that understaffing and lack of inmate monitoring had led to previous attacks at the jail was sufficient to establish "that the county maintains an unconstitutional policy of understaffing its jail and of failing to monitor

inmates").

>    5.  *Individual-Capacity Claims Against Defendant Taylor and the Commissioners*

To state an individual-capacity claim under § 1983, a plaintiff must allege facts to establish the defendant's personal involvement in the asserted violation of federal rights. *Schneider*, 717 F.3d at 768.  Likewise, to state a claim for supervisor liability, a plaintiff must allege facts showing an "'affirmative link' between the supervisor and the constitutional violation."  *Id.* at 767.  To impose individual liability—irrespective of whether such liability is based on a failure-to-supervise theory—the plaintiff must allege facts showing: (1) the defendant's personal involvement; (2) a sufficient causal connection; and (3) a culpable state of mind.  *Id.*; *see also Moya v. Garcia*, 895 F.3d 1229, 1233 (10th Cir. 2018) (explaining that supervisors could be "personally involved in the underlying violations through their own participation or supervisory control").

Defendant Taylor and the Commissioners also seek dismissal of the claims asserted against them in their individual capacities, arguing that Plaintiff has failed to adequately plead these elements.  As discussed above, Plaintiff has alleged personal involvement by Defendant Taylor and the Commissioners in Mr. Pendleton's constitutional deprivation. Specifically, Plaintiff alleges that: (1) Defendant Taylor failed to use available funds to ensure adequate staffing and inmate supervision at the OCDC; and (2) the Commissioners composed a budget that failed to allocate sufficient funds for the safekeeping of inmates at the OCDC.  Compl. ¶ 40; *see also* ¶¶ 34-39, 41-50.  Moreover, Plaintiff has sufficiently alleged that Defendant Taylor and the Commissioners acted with the requisite culpability:

deliberate indifference.  *See supra*.  What remains to be determined, therefore, is whether a sufficient causal connection exists.  *See Schneider*, 717 F.3d at 767.

"Section 1983 imposes liability on a government official who 'subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights.'"  *Id.* at 778 (omission in original) (internal quotation marks omitted).  "Causation is generally a question of fact for the jury."  *Id.*  "[T]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."  *Dodds v. Richardson*, 614 F.3d 1185, 1211 (10th Cir. 2010); *accord Schneider*, 717 F.3d at 768-69.  Plaintiff plausibly alleges that the Commissioners' failure to fund jail operations and Defendant Taylor's failure to ensure adequate staffing and inmate supervision set in motion a series of events that these Defendants knew or should have known would enhance the likelihood of inmate-on-inmate violence.

Thus, the Court concludes that Plaintiff has satisfied her pleading burden for the imposition of individual liability against Defendant Taylor and the Commissioners.

### 6. Assertion of Qualified Immunity

Finally, Defendant Taylor and the Commissioners nominally argue that they are entitled to qualified immunity as to the claims asserted against them in their individual capacities.  "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

"In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted). In making this assessment, the Court must construe the complaint in the light most favorable to Plaintiff, accept all well-pleaded allegations as true, and draw all reasonable inferences in Plaintiff's favor. *See Bella v. Chamberlain*, 24 F.3d 1251, 1254 (10th Cir. 1994).

As thoroughly detailed above, Plaintiff's facts support her claim that these Defendants violated Mr. Pendleton's constitutional rights in connection with the events of July 18, 2017. And while Defendants' invocation of qualified immunity arguably raised the clearly-established-law question, *see Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015), Defendants argue only that the law was not clearly established as to "constitutional tort liability for preliminary funding decisions," which is not a complete or accurate characterization of Plaintiff's § 1983 claims of liability, as discussed above. Plaintiff responds by citing multiple published Tenth Circuit decisions supporting her position that it was clearly established prior to July 18, 2017, that officials who provide and oversee jail facilities may be liable for injuries caused by inmate-on-inmate violence under the alleged circumstances. *See* Pl.'s Resp. to Taylor Indiv. Capacity Mot. at 17-19; Pl.'s Resp. to Comm'rs Indiv. Capacity Mot. at 8-14.

Accordingly, the Court declines to dismiss Plaintiff's individual-capacity claims on the basis of qualified immunity.[6]

### C. State-Law Claims

Relying on *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013), Plaintiff asserts claims against the Board for violation of Mr. Pendleton's due process rights under article 2, section 7 of the Oklahoma Constitution. *See* Compl. ¶¶ 64-65, 68-69, 72-73; Pl.'s Resp. to Bd. Mot. & Comm'rs Official Capacity Mot. at 30 ("All state law claims are asserted against the Board consistent with state law.").[7]  In *Bosh*, the Oklahoma Supreme Court recognized a private cause of action for excessive force in violation of article 2, section 30 of the Oklahoma Constitution and held that such an action was not barred by the Oklahoma Governmental Tort Claims Act ("GTCA"), which, at that time, did not expressly immunize the State and its political subdivision from tort claims based on alleged state-constitution deprivations. *See Bosh*, 305 P.3d at 997-1004.

Based upon the current state of the law, however, Plaintiff's state-law claims are

---

[6] This disposition "does not foreclose [these Defendants] from reasserting their entitlement to qualified immunity on a motion for summary judgment should [Plaintiff's] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (reversing a grant of qualified immunity on a motion to dismiss where it was "premature, absent a factual record"). The Court makes no finding as to whether these Defendants, at the appropriate stage, will be able to to show entitlement to qualified immunity when Plaintiff "can no longer rest on the pleadings." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). *See generally* 2 *Moore's Federal Practice* § 12.34[4][b] (3d ed. 2017) (noting that ordinarily establishment of the defense of qualified immunity requires factual review and should not support dismissal for failure to state a claim).

[7] The individual Defendants' request to dismiss these claims as to them is moot in light of Plaintiff's clarification.

subject to dismissal. In 2014, "the Legislature . . . responded to *Bosh* by amending the GTCA to specify that the State's immunity from suit extended even to torts arising from alleged deprivations of constitutional rights." *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 238 (Okla. 2018); *see* Okla. Stat. tit. 51, §§ 152(14) (2014), 152.1(A). In *Barrios,* the Oklahoma Supreme Court held that, in light of the 2014 legislative amendment and "the GTCA's specific prohibition against tort suits arising out of the 'operation or maintenance of any prison, jail or correctional facility,'" the holding of *Bosh* cannot "be extended to allow inmates allowing violations of their Article II, Section[] 7 . . . rights to bring suit against the State for money damages." *Barrios*, 432 P.3d at 238-39. Accordingly, Plaintiff's state-law claim for violation of this provision of the Oklahoma Constitution must be dismissed. *See id.*; *Burke v. Muskogee Cty. Council of Youth Servs.*, No. CIV-18-108-RAW, 2019 WL 2163611, at *4 (E.D. Okla. May 17, 2019).[8]

CONCLUSION

For the foregoing reasons, the Court orders as follows:

Defendants' Motions (Doc. Nos. 5, 6, 7, 8, 9) are each GRANTED IN PART and DENIED IN PART. Plaintiff's federal constitutional claims shall proceed, but Plaintiff's state-law claims are dismissed without prejudice.

---

[8] The Oklahoma Supreme Court went on to note, "[E]ven if not barred by sovereign immunity, . . . it is doubtful that such claims would exist in the Oklahoma common law." *Barrios*, 432 P.3d at 239 ("[C]ertainly nothing in the text of Article II, Sections 7 and 9 creates a tort cause of action for money damages as a remedy to vindicate violations of those rights . . . .").

This case shall be set for a status and scheduling conference on the Court's next regular docket.

IT IS SO ORDERED this 30th day of September, 2019.

CHARLES B. GOODWIN
United States District Judge